## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | | |
|---|---|---|
| **Marcus A. Helt, Receiver for** | § | |
| **Sethi Petroleum, LLC and** | § | |
| **Sameer P. Sethi** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | **Case No.:** 16-cv-148 |
| **v.** | § | |
| | § | |
| **Bank of America, National Association** | § | |
| | § | |
| **Defendant.** | § | |
| | § | |
| | § | |

## RECEIVER'S COMPLAINT TO RECOVER
## AVOIDABLE TRANSFERS AND OBTAIN OTHER RELIEF

Marcus A. Helt, the Court-appointed receiver for Sethi Petroleum, LLC and Sameer P. Sethi, files this *Receiver's Complaint to Recover Avoidable Transfers and Obtain Other Relief* (the "**Complaint**") against Defendant Bank of America, National Association (the "**Defendant**"), and in support thereof, respectfully states and alleges as follows:

## I.
## NATURE OF THE ACTION

1.      Among other things, in this lawsuit Marcus A. Helt, the Court-appointed receiver for Sethi Petroleum, LLC and Sameer P. Sethi (the "**Receiver**"), seeks to:

(a)      avoid and recover transfers of Sethi Petroleum LLC's interest in property from the Defendant, any person or entity for whose benefit such transfers were made, and any subsequent transferee,

subject to further discovery and proof, all fraudulent transfers made pursuant to the Texas Uniform Fraudulent Transfer Act[1]; and

(b)  obtain other relief as the Court deems just and equitable.

## II.
## JURISDICTION AND VENUE

2.  This Complaint relates to the lawsuit currently pending before the United States District Court for the Eastern District of Texas, Sherman Division, between the United States Securities and Exchange Commission (the "**SEC**"), as plaintiff, and Sethi Petroleum, LLC and Sameer P. Sethi (collectively, the "**Receivership Defendants**"), as defendants; case number 4:15-cv-00338-ALM (the "**SEC Case**"). This lawsuit is an action to recover judgment with respect to persons or entities that received assets traceable to the Receivership Defendants. All such actions are required to be filed in this Court pursuant to the *Order Appointing Receiver* (the "**Receivership Order**") entered on May 14, 2015 in the SEC Case.

3.  This is a complaint for causes of action under TUFTA §§ 24.001 *et seq*. of the Texas Business and Commerce Code. This Court has supplemental jurisdiction over this action pursuant to 28 U.S.C. 1367(a) because the claims forming the basis of this Complaint are so related to claims in the SEC Case that they form part of the same case or controversy under Article III of the United States Constitution.

4.  Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 (b) and (c) because a substantial part of the events giving rise to the claims forming the basis of this action occurred in this judicial district, the defendant continuously and

---

[1] References to the Texas Uniform Fraudulent Transfer Act ("**TUFTA**") shall mean TEX. BUS. & COM. CODE ANN. §§ 24.001 *et seq*.

2

purposefully did business in this judicial district, and the Defendant has promoted goods and services in this judicial district.

### III.
### THE PARTIES

5.      Sethi Petroleum, LLC a/k/a Sethi Financial Group and Sethi Oil & Gas, Inc. ("**Sethi Petroleum**") is a limited liability company organized and existing under the laws of the State of Texas, with a principal place of business located at 101 E. Park Boulevard, Suite 755, Plano, TX 75074.

6.      Sameer P. Sethi ("**Sethi**"), age 34, resides in Murphy, Texas. Sethi is the President and sole Managing Member of Sethi Petroleum.

7.      On May 14, 2015 (the "**Effective Date**"), the U.S. District Court for the Eastern District of Texas issued the Receivership Order in the SEC Case, appointing Marcus A. Helt as the receiver over all of the Receivership Defendants' assets, monies, securities, properties, real and personal, tangible and intangible, of whatever kind and description, wherever located, and the legally recognized privileges (with regard to Sethi Petroleum) (collectively, the "**Receivership Assets**") and all books and records, client lists, account statements, financial and accounting documents, computers, computer hard drives, computer disks, internet exchange servers, telephones, personal digital devices, and other informational resources of or in possession of the Receivership Defendants (collectively, the "**Receivership Records**" and together with the Receiver Assets, the "**Receivership Estate**").

8.      The Receivership Estate over which the Receiver serves as receiver includes each of the joint ventures, contemplated joint ventures, entities, and

3

contemplated entities listed on **Exhibit A** hereto, each of which operated under the name of Sethi Petroleum, LLC.

9.      Pursuant to the Receivership Order, the Receiver is authorized to institute actions or proceedings to recover judgment with respect to persons or entities that received assets traceable to the Receivership Estate. The Receiver is vested with the authority and right to prosecute and settle all Receivership Estate causes of action, including the causes of action asserted in this Complaint.

10.     Upon information and belief, the Defendant is a foreign financial institution, with a principal place of business located at 100 N. Tryon Street, Charlotte, North Carolina 28255. Upon information and belief, the Defendant may be served with process in this State by serving its registered agent, C T Corporation System, at 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136.

**IV.**
**FACTUAL BACKGROUND**

**A.      The Sethi Enterprise Operated an Overall Fraudulent Scheme**

11.     On May 14, 2015, the SEC filed the SEC Case against the Receivership Defendants, alleging, among other things, that the Receivership Defendants offered and sold securities in violation of the antifraud provisions of the federal securities laws, specifically Section 17(a) of the Securities act of 1933 and Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 thereunder.

12.     Upon the Receiver's appointment, the Receiver began investigating the Sethi Enterprise (defined below), and discovered that from at least 2011 to May 2015, the Receivership Defendants, any of its parents, successors, affiliates, or subsidiaries, and the Fraudulent Investment Vehicles (defined below) (collectively, the "**Sethi Enterprise**"),

4

carried on a fraudulent scheme and made materially false and misleading statements and omissions to potential and actual investors of the Sethi Enterprise in order to offer and sell securities in several purported "joint ventures,"[2] oil and gas investment programs solicited by the Sethi Enterprise. Upon information and belief, the so-called joint ventures include, but are not limited to, the following named entities:

- Bakken Patriot 3-4 Joint Venture

- Bakken Patriot 8-5 Joint Venture

- Bakken Dragon 1-12 Joint Venture

- FD LVII

- Sethi – North Dakota Drilling Fund – LVIII Joint Venture

- Patriot Drilling Program LXI Joint Venture

- Ragel White Joint Venture

- Ragel White 1-3 Joint Venture

- SAM 1&2 Joint Venture

- SAM 3&4 Joint Venture

During the prosecution of this action, through discovery or otherwise, the Receiver may discover other, similar such purported joint ventures by which the Receivership Defendants carried on the fraudulent scheme indicated above (the "**Unknown Investment Vehicles**"), or may discover other names by which the foregoing purported joint ventures are identified. The foregoing purported "joint ventures," along with any

---

[2] Sethi Petroleum and Sethi have described the entities used to carry on the fraudulent scheme as "joint ventures." These entities may not constitute joint ventures as legally-recognized enterprises. Throughout this Complaint, the Receiver refers to such entities as "investment vehicles," and does not make any representations or admissions regarding whether or not the entities constitute joint ventures as legally-recognized entities. Sethi Petroleum and/or Sethi used the Fraudulent Investment Vehicles (defined below) to perpetuate the fraudulent scheme or enterprise.

Unknown Investment Vehicles are collectively referred to herein as the "**Fraudulent Investment Vehicles**."

13.     To obtain new Investors, telemarketing employees of the Sethi Enterprise first "cold called" potential Investors. Telemarketer employees placed calls from a call center located in Richardson, Texas leased by Sethi Petroleum. The telemarketer employees were expected to cold call at least 150 prospective Investors per day.

14.     The telemarketers misrepresented the returns that should be expected by Investors, by making statements such as:

> -     *"Because of the current market conditions our investors are seeing (over 40%/incredible) returns and are capitalizing on some excellent tax benefits."*

> -     *"Believe it or not, in some of our past projects we have even gotten our investors 40% return in less than 6 months' time!"*

> -     *"We currently are in the process of funding a $1.6 million oil well in North Texas and are offering prospective partners an investment opportunity that will yield (an excess of/over) 40% annually/4 to 1 on there [sic] money) so they may also benefit from this program."*

> -     *"Would you be willing to take a look at a [sic] Oil and Gas opportunity that will yield you over 90% return annually?"*

> -     *"Well, let me ask you this: if I could show you a program that can quite possibly show a 120% annual return after tax benefits, would you be willing to take a look?"*

15.     The telemarketers then followed up the phone call (or calls) by sending a potential Investor an offering memorandum containing a self-addressed envelope for the Investor to send a check back to the Sethi Enterprise via FedEX, UPS or other common carrier.

6

16.     The offering memoranda sent to potential Investors also contained materially false and misleading statements. Such misrepresentations included how the Sethi Enterprise intended to use the Investors' money. The misrepresentation was knowing, material, and deliberate. The misrepresentation was made with the intention that Investors would rely on that misrepresentation and invest money with the Sethi Enterprise. Investors did rely on those misrepresentations and sustained, collectively, millions of dollars of financial injury as a direct result.

17.     Upon information and belief, the offering memoranda represented that 75% or 80% of total money invested by Investors in a particular Fraudulent Investment Vehicle would be spent on the acquisition and development of mineral interests, and 20% or 25% of the total money invested would be retained by the Sethi Enterprise as a one-time management fee.

18.     Upon information and belief, the offering memoranda represented that the funds invested would be used to acquire interests in the "Prospect Wells" that were the subject of the particular Fraudulent Investment Vehicle and discussed in the offering memorandum.

19.     In reality, however, money invested in a particular Fraudulent Investment Vehicle usually was immediately commingled with funds of other Investors intended for other Fraudulent Investment Vehicles. Instead of using the Investors' funds to acquire interests, the Sethi Enterprise used the majority of the Investors' funds to pay inflated overhead or insiders of the Sethi Enterprise. Funds invested by Investors were frequently consolidated into accounts owned by Sethi Petroleum, LLC, Sethi Financial Group, Inc., Sethi Oil & Gas Company, and/or Sethi Operating Company, and frequently moved

7

between accounts in the names of individual Fraudulent Investment Vehicles.  The Sethi Enterprise did not keep a record or tracking of inter-company or inter-Fraudulent Investment Vehicle transfers.

20.     The various means employed by the Sethi Enterprise described above were effective to deceive Investors into making payments to the Sethi Enterprise. In total, the Investors made roughly $13.8 million in payments to the Sethi Enterprise.

21.     As Investors became increasingly frustrated with the lack of returns on their investments, those Investors called the Sethi Enterprise. Unfortunately, the Sethi Enterprise was the only source of information available to the Investors on how their investments were being spent. The Sethi Enterprise intentionally misled or limited the information that could be disclosed to those Investors in order to maintain the façade of a legitimate enterprise.  The individuals working for the Sethi Enterprise knew that they had a duty to disclose how the Investors' money was being spent. Yet, the Sethi Enterprise intentionally withheld such material information from Investors to avoid those Investors taking legal action against the Sethi Enterprise. As a result, the fraudulent scheme of the Sethi Enterprise avoided detection for a number of years. During that time, new Investors continued to be deceived into investing money with the Sethi Enterprise and the Investors' money continued to be squandered and used for purposes other than as represented to the Investors.

22.     Upon information and belief, the Sethi Enterprise raised approximately $13.8 million of Investor money through the above-described practices.  Rather than spending 75-80% of money raised on the acquisition and development of mineral

8

interests, less than $3 million (representing less than 25% of funds raised) appears to have actually been spent on the acquisition and development of mineral interests.

23.     Upon information and belief, of the approximately $13 million of Investor money obtained by the Sethi Enterprise, approximately:

A.     $1,350,000, or 11%, was distributed to insiders of the Sethi Enterprise, or affiliates of or controlled by the Sethi Enterprise;

B.     $1,992,000, or 16%, was applied toward credit card balances of the Sethi Enterprise, insiders of the Sethi Enterprise, or affiliates of or controlled by the Sethi Enterprise;

C.     $4,525,000, or 35%, was distributed as payroll of the Sethi Enterprise;

D.     $548,000, or 4%, was spent on rent;

E.     $1,188, or 9%, was spent on overhead of the Sethi Enterprise;

F.     $2,998,000, or 23%, was spent on the acquisition of mineral interests;

G.     $290,000, or 2%, was unable to be categorized.

24.     The operations of the Sethi Enterprise constitute a single fraudulent scheme or enterprise. To persuade Investors to transfer funds to the Sethi Enterprise, the Sethi Enterprise engaged in a practice and course of business of making untrue statements of material facts and material omissions, including those described above. They engaged in a practice and course of business of immediately misappropriating Investors' funds by spending such funds on personal expenses of Sethi, Praveen Sethi (Sethi's father), and/or Shahnaz M. Sethi (Praveen Sethi's wife), among other insiders, and commingling such funds among Sethi's, Praveen Sethi's, and/or Shahnaz M. Sethi's accounts. The fraudulent practices employed by the Sethi Enterprises demonstrate that it constitutes an overall scheme or enterprise to defraud the Investors.

9

25.     Moreover, because the Sethi Enterprise was investing such a nominal amount of Investor money in the acquisition and development of mineral interests, the interests actually acquired never generated (nor ever had any hope of generating) sufficient revenue to cover the bloated operating expenses of Sethi Petroleum and transfers to insiders.  Thus, the only way to maintain the fraudulent scheme, was through the continued "sales" (i.e., fraudulent solicitation of new Investor money). Senior management of the Sethi Enterprise repeatedly acknowledged in internal documents that "sales" were the only source of income. At no time was the Sethi Enterprise balance sheet solvent or able to pay its debts as they came due without continual inflow of additional Investor money.

26.     Such fraudulent scheme was affected for the purpose of inducing the Investors to transfer funds to the Sethi Enterprise, so that the Sethi Enterprise could pocket the money for itself and its principals, their family, or others, and then perpetuate such scheme indefinitely. Although a very limited number of funds received by the Sethi Enterprise from the Investors were invested in oil and gas properties, such investments were inadequate to maintain a viable business and served only to maintain the façade that the Sethi Enterprise was carrying on a legitimate business enterprise. In fact, such investments were made only to deceive Investors and conceal the fraudulent scheme of the Sethi Enterprise, so that the fraud could be perpetuated.

27.     Pursuant to the Receivership Order, all funds and/or interests in property of the Sethi Enterprise comprise the Receivership Estate, notwithstanding the fraudulent nature in which the Sethi Enterprise obtained such funds and/or interests in property.

10

28.     The Sethi Enterprise made certain transfers of its interest in property to various transferees, including the Defendants, for little or no consideration. Any such transfer comprises property of the Receivership Estate.

29.     Pursuant to the Receivership Order, all funds and/or interests in property of the Sethi Enterprise comprise the Receivership Estate, notwithstanding the fraudulent nature in which the Sethi Enterprise obtained such funds and/or interests in property. Because the limited investments in oil and gas properties generated insufficient revenue to meet basic overhead of the Sethi Enterprise, the only way to maintain and perpetuate the Sethi Enterprise was through the solicitation, and misappropriation, of Investor money.

30.     The Sethi Enterprise made certain transfers of its interest in property to various transferees, including the Defendant, for little or no consideration. Any such transfer comprises property of the Receivership Estate.

**B.     Transfers to the Defendant**

31.     Prior to the Effective Date, the Sethi Enterprise made one or more transfers of an interest in its property, to or for the benefit of, various transferees, including to the Defendant (the "**Transfers**"). A schedule identifying each Transfer, including the date of such Transfer, the identity of the transferor and the transferee, as well as the Transferor's bank account, is attached hereto as **Exhibit A**[3] and is incorporated herein by reference.

---

[3] The checks that were examined to build such matrix were, in many cases, illegible or otherwise difficult to read due to the quality of the photocopies of such checks that were provided to the Receiver. During the prosecution of this action, through discovery or otherwise, the Receiver may determine that the total amount of the Transfers differs from the amount identified in this Complaint, and reserves the right to amend this Complaint to include additional Transfers.

32.    The money comprising each Transfer was property of the Sethi Enterprise because (a) the money came from a bank account owned by Sethi Petroleum and/or one of its parents, successors, affiliates, or subsidiaries, and into which only money owned by such entities was deposited; (b) the money came from a bank account (i) held in the name of Sethi Petroleum's alter ego, (ii) over which the Sethi Enterprise exercised control and dominion, or (iii) operated for the benefit of the Sethi Enterprise; or (c) the money deposited into the bank account owned by the Sethi Enterprise was commingled with other funds owned by the Sethi Enterprise. As explained above, the funds comprising each Transfer came not from revenue generated by legitimate business activities, but from monies contributed by defrauded investors. As property of the Sethi Enterprise, the money comprising each Transfer constitutes assets of the Receivership Estate.

33.    The Sethi Enterprise made each Transfer with actual intent to hinder, delay, or defraud its existing and future creditors. Each Transfer was made in furtherance of an overall scheme to defraud Investors of the Sethi Enterprise. All funds of the Sethi Enterprise were obtained through fraudulent conduct.

34.    The Sethi Enterprise did not receive a reasonably equivalent value in exchange for each Transfer. The Defendant did not provide any consideration to the Sethi Enterprise in exchange for any Transfer.

35.    The Defendant does not have any defenses, affirmative defenses, offsets, counterclaims, or other relief with regard to the allegations, causes of action, and remedies set forth in this Complaint.

36.     The value of the Transfers received by the Defendants are, therefore, properly considered assets of the Receivership Estate and must be returned to the Receivership Estate to compensate victims of the fraud perpetuated by the Sethi Enterprise.

37.     At the time each Transfer was made, the Sethi Enterprise was engaged or was about to engage in a business or a transaction for which the remaining assets of the Sethi Enterprise were unreasonably small in relation to the business or transaction; and/or the Sethi Enterprise intended to incur, or believed or reasonably should have believed that the Sethi Enterprise would incur, debts beyond its ability to pay as they became due.

38.     The Sethi Enterprise was insolvent at the time each Transfer was made.

39.     The Defendant is the immediate or mediate transferees of the Transfers.

### V.
### COUNT I
**Avoidance, Preservation, and Return of Actual Fraudulent Transfers Under TUFTA § 24.005**

40.     The Receiver realleges and incorporates by reference the preceding paragraphs of the Complaint.

41.     The Receiver is entitled to disgorgement of the value of all Transfers paid to the Defendant because such payments constitute fraudulent transfers under TUFTA. The Sethi Enterprise made the Transfers with actual intent to hinder, delay, or defraud its creditors; as a result, the Receiver is entitled to the disgorgement of the value of those Transfers from the Defendant.

13

42.     The Sethi Enterprise is a debtor, the Investors are creditors of the Sethi Enterprise, and the Transfers were made from property of the Sethi Enterprise rightfully belonging to defrauded investors.

43.     The Sethi Enterprise made each Transfer with actual intent to hinder, delay, or defraud its creditors. Such intent is evidenced by some or all of the following:

    (a)     each Transfer was made to an affiliate of an insider of the Sethi Enterprise;

    (b)     each Transfer was concealed because the Sethi Enterprise failed to maintain records of the Transfers or disclose the Transactions in the Sethi Enterprise's books and records;

    (c)     before each Transfer was made, the Sethi Enterprise had been sued or threatened with suit;

    (d)     the Sethi Enterprise removed or concealed assets received from the Investors, among other assets, via the Transfers;

    (e)     the value of the consideration received by the Sethi Enterprise was not reasonably equivalent to the value of the Transfers – indeed, the Sethi Enterprise received no consideration whatsoever in exchange for the Transfers; and

    (f)     the Sethi Enterprise was insolvent or became insolvent shortly after each Transfer was made.

44.     Courts determine actual intent to defraud by considering certain "badges of fraud" as provided in TUFTA. Several of the badges of fraud exist here, as explained above. Therefore, the Transfers are fraudulent transfers in violation of TUFTA § 24.005(a)(1) and/or (b).

45.     The Defendant is either the initial transferees of the Transfers or the immediate or mediate transferees of such initial transferees, or are persons for whose benefit the Transfers were made.

14

46.     As of the date of this Complaint, the Defendant has not returned any of the value of the Transfers to the Receivership Estate.

47.      Based upon the foregoing allegations stated in this Complaint, each Transfer is subject to avoidance pursuant to TUFTA §§ 24.005(a)(1), (b) and 24.008. The Receiver is entitled to a judgment (a) avoiding and preserving the Transfers for the Receivership Estate; (b) directing that the Transfers be set aside; and (c) recovering the Transfers, or the value thereof, from the Defendant for the benefit of the Receivership Estate.

### VII.
### COUNT 2
### Avoidance, Preservation, and Return of Constructive Fraudulent Transfers

48.     The Receiver realleges and incorporates by reference the preceding paragraphs of the Complaint.

49.     The Transfers constitute constructive fraudulent transfers under TUFTA § 24.005(a)(2). The Receiver is entitled to the disgorgement of the value of those Transfers from the Defendant.

50.     The Transfers were made from the property of the Sethi Enterprise.

51.     The Sethi Enterprise is a debtor, the Investors are creditors of the Sethi Enterprise, and the Transfers were made from property of the Sethi Enterprise rightfully belonging to defrauded investors.

52.     The Sethi Enterprise and/or Sethi and/or P. Sethi, as applicable, made each Transfer without receiving a reasonably equivalent value in exchange for the Transfer. In fact, the Sethi Enterprise received no value from the Defendant in exchange for the Transfers.

15

53.     Additionally, the Sethi Enterprise was insolvent at the time each Transfer was made or became insolvent as a result of each Transfer. Furthermore, the Sethi Enterprise was insolvent from inception because the only means by which it maintained its existence was by defrauding Investors, as explained above. The Sethi Enterprise was not paying its debtor's debts as they became due, and the sum of its debts was always greater than the value of its assets.

54.     At the time each Transfer was made, the Sethi Enterprise was engaged or was about to engage in a business or a transaction for which the remaining assets of the Sethi Enterprise were unreasonably small in relation to the business or transaction; and/or the Sethi Enterprise intended to incur, or believed or reasonably should have believed that the Sethi Enterprise would incur, debts beyond its ability to pay as they became due.

55.     The Transfers are fraudulent transfers in violation of TUFTA §§ 24.006(a) and 24.005(a)(2).

56.     The Defendant is either the initial transferees of the Transfers or the immediate or mediate transferees of such initial transferee, or are persons for whose benefit the Transfers were made.

57.     As of the date of this Complaint, the Defendant has not returned any of the Transfers to the Receivership Estate.

58.     Based upon the foregoing allegations stated in this Complaint, each Transfer is subject to avoidance pursuant to TUFTA §§ 24.006(a), 24.005(a)(2), and 24.008. The Receiver is entitled to a judgment (a) avoiding and preserving the Transfers for the Receivership estate; (b) directing that the Transfers be set aside; and (c) recovering the Transfers, or the value thereof, from the Defendants for the benefit of the Receivership Estate.

16

**VIII.**
**COUNT 3**
**Reservation of Rights**

59.     The Receiver realleges and incorporates by reference the preceding paragraphs of the Complaint.

60.     The Receiver had to retain attorneys to prepare, file, and prosecute this action, and he has incurred fees and expenses in connection therewith.

61.     TUFTA § 24.013 provides for the recovery of "costs and reasonable attorney's fees as are equitable and just."

62.     Based on the facts and circumstances surrounding the fraudulent acts described herein, it is equitable and just that the Receiver recover for his costs and reasonable attorney's fees. Accordingly, pursuant to TUFTA § 24.013 the Receiver seeks recovery of costs, including reasonable attorney's fees and expenses incurred by the Receiver in connection with the preparation and filing of all pleadings in this case and in prosecuting the same.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully prays for:

A.     an order of the Court declaring that the Transfers are avoided and set aside as fraudulent transfers pursuant to the Texas Uniform Fraudulent Transfer Act;

B.     an order of the Court directing and ordering that any Transfer avoided pursuant to the Texas Uniform Fraudulent Transfer Act or otherwise be preserved for the benefit of the Receivership Estate;

C.     an order of the Court directing and ordering Defendant, or any immediate or mediate transferee of an avoidable Transfer, turn over to the Receiver the full amount or value of the Transfers received by the Defendant, or any immediate or mediate transferee of such Defendant;

17

D.  an order of the Court awarding judgment against the Defendant in the Receiver's favor in an amount equal to:

- the full amount of the Transfers (and any other avoided transfers discovered after the date of this Complaint) made to  Defendant;

- pre-judgment interest at the maximum legal rate running from the time of the Transfers until the date of judgment herein;

- post-judgment interest at the maximum legal rate running from the date of judgment herein until the date the judgment is paid in full; and

- attorney's fees and costs incurred by the Receiver in this suit; and

E.  such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury on all issues so triable in this action.

18

Dated: March 1, 2016

Respectfully Submitted,

*/s/ Michael S. Haynes*
Michael S. Haynes (TX 24050735)
Matt J. Pyeatt (TX 24086609)
**GARDERE WYNNE SEWELL LLP**
3000 Thanksgiving Tower
1601 Elm Street
Dallas, Texas 75201-4761
Telephone: 214.999.3000
Facsimile: 214.999.4667
mhaynes@gardere.com
mpyeatt@gardere.com

**COUNSEL FOR THE RECEIVER,
MARCUS HELT**

19